*567 Daniel, Judge,
dissented, and delivered the following opinion. — The decision made by the Court below, that this paper writing could be admitted to probate, as a joint will of the two sisters, I am inclined to think, was erroneous. But I am unable to perceive, why it may not be admitted to probate as the separate and several last will and testament of each of the two sisters. It seems to me, that they have separately and severally, executed this paper as the last will of each of the underwriters, so far as relates to that portion of property which belonged to each, and which is mentioned and attempted to be disposed of, by this testamentary writing. The sisters do not even pretend to make a mutual will of their property to each other; or make any agreement express or implied, that the survivor shall have the property of the first deceased, during the life of the survivor. They both together, or either separately, had the power to revoke or alter this will; either might have revoked, without giving notice to the other of the fact of revocation. Then it would have stood as the will only of her that had not revoked. There is no agreement to be seen or implied in the case, that if one of the sisters would sign the will, or dispose of her property in this manner to the legatees, the other would; or if one should revoke, the other would, or probably would, have altered her will. I say there is no such agreement; it is not, therefore, a case in which a Court of Equity, could have entertained any jurisdiction, if one of them had revoked secretly. It is a case resting entirely upon the testamentary law of the land, which does not require any notice of revocation to be given. Why should the will of these two sisters be here frustrated, and the legatees disappointed? The law favours last wills and testaments; and it seems to me, that in establishing this paper as the separate will of each of the sisters, no principle ©f law or policy, can or will be violated. Because the case is a novel one, it by no means follows that the claims of the plaintiff are illegal. What is the test by which we learn whether a paper is a will or not ? A last will and testament is defined to be “ the just sentence of our will touching what we would have done after our death,” 2 Bla. Com. *568 499 ; Swinb. Pt. 1 sec. 2. 1 Will, on Exrs. 6. Trying this paper by this test, can any man doubt but that it is a will anc*testament? But >s said, that the paper contains an agreement, and therefore, its revocability as a will was destroyed, and by the testamentary law it could not be considered as a will. I deny the fact that the paper contains any agreement; therefore the Court of Equity has nothing to act upon. And again, I deny that the law of a Court of probate, would reject it as a will, even if it did contain an agreement, if it also contained the just sentence of the will of the sisters, touching what they would have done after their deaths. Such a paper would still be a will; and, although it were in the form of an agreement, it would be revocable by either of the sisters in their lifetime, by force of the testamentary law. The Court of Equity by its extraordinary power, and to prevent frauds, might restrain the revocation, or declare a revocation of it in the Court of probate a nullity. But can a judge sitting in a Court of probate do so ? I answer, no. Dufour v. Percira, 1 Dickens Rep. 419, was this: A wife had a separate estate: she and her husband agree to make a mutual will, which is drawn, and both execute it. The husband died; the wife proved the paper writing in the prerogative Court as his will, and afterwards she made another will. And the quession was, whether in a Court of equity, the wife should be permitted to revoke the mutual will. (It was not doubted, I think, but in a Court of probate she might revoke). Lord Camden, Chancellor, said “ consider how far the mutual will is binding, and whether the accepting the legacies under it by the survivor, is not a confirmation of it. I am of opinion it is. It (the will) might have been revoked by both jointly; it might have been revoked separately, provided the party intending it, had given notice to the other of such revocation.” Lord Camden, was evidently alluding to the law of a Court of Equity, when he said “ provided the party intending it, had given notice of revocationfor without such notice a fraud might have been committed on the other party, which a Court of Equity would relieve against But in a Court of probate (when the jurisdiction is no *569 extraordinary, like it is in chancery, where the Court applies to the consciences of the parties,) the law of the Court is, that all wills however made, are revocable at any time before the death of the persons making them; and that too, without notice to any body. And it is because a Court of probate cannot look at the instrument in the light of an agreement, as a Court of Equity can; but must only consider whether the paper is testamentary in its character, and if it is, to enforce the law of that Court, which says, that a will is ambulatory and revocable at any time before the death of the maker. It is, because of the inability of the probate Court, to give the proper relief, that we discover certain cases are brought before the Court of Equity, where they are acted on as agreements. In the case of Dufour v. Percira, there cannot be a doubt, but that the paper would have been admitted to probate in the Prerogative Court, as the will of the wife, as well as it had been already admitted to probate, as the last will of the husband, had not the wife made another will, which operated in the Prerogative Court according to the laws of that Court, as a revocation of the mutual will, so far as the same related to the wife. The Prerogative Court was bound to establish the last will of the wife, and consider the mutual will as revoked, so far as concerned the wife. But equity stepped in, and by its extraordinary power touched the consciences of the parties, and prevented fraud and imposition. Lord Camden, said, “ the first (the husband) that dies carries his part of the contract into execution. Will the Court of Equity afterwards permit the other to break the contract ? Certainly not. The wife has taken the benefit of the bequest in her favour by the mutual will; and hath proved it as such. I am of the opinion, that the last will of the ivife, so far as it breaks in upon (the agreement) the mutual will is void.” There is no doubt but Lord Camden thought the mutual will would have stood good in the Court of probate, as the separate and individual will of each, had it not been revoked, as to the wife, by the subsequent inconsistent will of the wife, and by force of the law of the Court of probate. In Walpole v. Oxford, 3 Ves. Rep. 417, the Chancellor in *570 speaking of the case of Dufour v. Percira, says: “ there was no probate of the mutual will as the will of the wife in the Ecclesiastical Court, it was considered purely as the the will of the husband.” I ask why was not the mutual will proved as her will 1 The answer is, because her first will was revoked by the second, according to the laws of a Court of probate. The Chancellor, therefore, had a right to say, after what had happened, that the mutual will neither was, nor by possibility could be the will of the wife. But it was in equity a good contract, and it should there be so understood, and enforced, notwithstanding it was revoked as a will, in the probate Court, by her subsequent will made and established in that Court. The case of Hobson v. Blackburn, 2 Eng. Eclesi. Rep. 115, simply lays down this principle : — “ That mutual or conjoint wills irrevocable by either of the supposed testators, is unknown to the testamentary law of this country.” I suppose, that no body ever doubted but that the law was as there stated. How could it be a last will, if it was not ambulatory and subject to revocation at any moment before the supposed testator’s death"? If we will but attentively examine the facts of that case, it will be made too plain to cavil about. Martha, Susanna, and Joshua Hobson (ajbrother and two sisters) each being worth about eight thousand pounds, in the year 1794 make a will, which stripped of its useless verbiage, is in this manner. “ We, Martha, Susanna, and Joshua Hobson, do agree to the following assignment of our property in case of each others’ decease. The whole of the interest of it shall devolve to the longest life or lives while continuing single,” &c.; the will then proceeds to specify the property disposed of, and make ulterior limitations in case of the marriage of either or death of the survivor. They appoint each other executors and executrixes. Joshua Hobson died in 1796, and probate as to the effects of Joshua was granted by the Prerogative Court, to Martha and Susanna Hobson, as executrixes. In November, 1820, Martha Hobson made a separate will of her estate, which had increased to thirteen thousand pounds, inconsistent with the first mutual will of 1794. Probate of the joint will of 1794, as that of Martha Hobson, *571 was prayed by one of the executors named in that will, on the one hand, and those claiming under the separate will of Martha Hobson, of 1820, prayed probate on that at the same time, on the other hand. The two wills of Martha, viz. that of 1794, as well as that of 1820, were both presented to the judge at the same moment of time for probate. Sir John Nicholl did that, and no more, which every County Court in this state would have done in a similar case, he admitted the last will of Martha Hobson, (that of 1820,) to probate, or did not reject it, and rejected the will of 1794. Sir Johjt Nicholl, speaking of the will of 1794, (as appears in the beginning remarks of his reported opinion,) does say, or is made by the reporter to say, “ that an instrument of this nature is unknown as a will to the laws of this country at all.” Sir John? Nicholl, was, as had Lord Camden been, in Dufour v. Percira, struck at first, more from the novelty of the thing, than its difficulty: and in reading a little further on his reported opinion, we see the plain common sense grounds upon which he decided the cases. He there says : “ The allegation, (propounding the will of 1794,) plainly proceeds upon the notion of the irrevocability of the instrument which it propounds as the will of the deceased. Why this very circumstance destroys its essence as a will, and converts it into a contract; a species of instrument over which this Court has no jurisdiction. Upon these broad and intelligible grounds, I reject the allegation.” For the substance of the allegation propounding the will of 1794, (which is the same as is the declaration, in an action at common law,) rested the case wholly on the notion of the irrevocability of the paper of 1794, under the circumstances in which it was made, and also after the fact of the death of the brother who had signed it, and its (the same paper) having been before ■pronounced his will by the Court of probate. The opposition to the allegation made (which resembles á demurrer at common law,) brought the question of law upon the facts and averments made in the allegation, directly for the opinion of the judge. And, he very properly pronounced against the allegation, and particularly against the new-fangled notion of the proctor who framed it. Mr. Williams (in *572 his book on executors, vol. 1, page 9,) seems to me to give rather the dictum of Sir J. Nicholl, in Hobson v. Blackburn, upon an irrelevant point, than the true grounds of his decision upon the merits of the case. Certain it is that Mr. Addams, the reporter of the case, did not understand the judge to decide the case on the ground that Mr. Williams has stated he did. Mr. Williams, (in a subsequent part of the same volume, page 65, speaking as to conjoint and mutual wills being against law,) says, “ one ground of objection to such an instrument as testamentary is, its irrevocability,” evidently hingii^g upon what Sir John Nicholl alluded as to the allegation. It appears to me that Mr. Williams, as well as my brothers in this Court, have entirely failed in comprehending the meaning of Sir John Nicholl, in his judgment in the case of Hobson v. Blackburn. The judge said that the allegation, propounding the will of 1794, plainly proceeded upon the notion of the irrevocability of the instrument, by the law of that Court. That position, the judge very correctly denied ; and the reason that the allegation was not admitted, at least so far as to let the will of 1794 be admitted to probate, was upon no other legitimate ground, but that Martha had made the subsequent will of 1820, which had, in the Court of probate, revoked the will of 1794. I collect the fact that Mr. Addams so understood Sir John, Nicholl, from his synopsis of the case; and, furthermore, from what is so plainly stated by the two Chancellors who decided the cases of Dufour v. Percira, and Walpole v. Lord Oxford, as the understood testamentary law of the Court of probate. If it was not the law of the Ecclesiastical Court, I am at a loss to conceive why the Court of Equity should be called on to restrain or give relief. It must be a demanduponthe extraordinary powers of a Court ofEquity, to have that justice done, which by the positive and stubborn law of the Court of probate could not be attained in that Court, or in other words, justice was likely to be frustrated by the rules of that Court. Can any man believe that if Martha Hobson had not have made the will of 1820, but that Sir John Nicholl would have admitted the mutual will of 1794 to probate, as her last will ? We *573 see, that the Prerogative Court did not object to the form of the instrument when it was propounded and admitted to probate as the will of Joshua Hobson, the first of the three that signed it, that had died. So in Dufour v. Percira, the paper had been propounded as the will of the husband on his death, and admitted to probate as his will, although purporting to be the joint will of husband and wife. In wills only disposing of personal property, form is not looked at.' It may be almost in any form, as is to be seen in the many forms noticed in Williams on Ex’rs, 54 and 55, provided it is the intention of the deceased that it should operate after his death. All the difficulty in this case, has arisen out of a dictum of Sir John Nichoix, in the case of Hobson v. Blackburn. He did not decide that case on it. The dictum is in conflict with the clearly ascertained notions of Lords Camden and Loughborough, as to what the law was, not in the Courts of Equity where they presided, but in the Ecclesiastical Court. There is neither reason nor policy, as it seems to me in favour of the dictum. Mr. Addams, unfortunately for these plaintiffs, published the dictum, and Mr. Williams had propagated the error.
Whether the legatees, under the will of the sister first dying, would take immediate vested interests in their legacies, on the death of such_/i?\s¡{ dying sister, or whether the said legacies would be executory and vest only on the death of both the sisters, is a question, the decision of which has no bearing upon the case now'before the Court; which is, whether the paper shall be admitted to probate as containing the distinct and separate will of each of the sisters. Not until after the probate of a will, can any question arise as to the vesting or not vesting of legacies under that will. I think the paper contains the separate and distinct will of each of the two sisters who have separately subscribed the same; and ought to be admitted to probate as the several will of each of the subscribers.
Per Curiam. Judgment reversed.